## GEORGE E. GATHWRIGHT, ET UX. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 51, January Term, 1943.]

*Decided February 9, 1943.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, GRASON, and MELVIN, JJ.

*James J. Doherty,* with whom was *John R. Norris* on the brief, for the appellants.

*Henry L. D. Standford, Jr., Assistant City Solicitor of Baltimore,* with whom was *F. Murray Benson, City Solicitor of Baltimore,* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

The appellants own two pieces of property in the City of Baltimore, one situated at the northwest corner of Linhill Avenue and Rockrose Avenue, and the other at the southernmost corner of Ninth and Chesapeake Avenues. On the 16th day of October, 1941, the property at Linhill Avenue and Rockrose Avenue was sold by the City Collector and the Collector of State Taxes to the Mayor and City Council of Baltimore for non-payment of state and city taxes. On the 30th day of October, 1941, the property at the corner of Ninth and Chesapeake Avenues was sold under the provisions of Chapter 540 of the Acts of the General Assembly of Maryland, 1941, by the City Collector and Collector of State Taxes to the Mayor and City Council, in fee simple, for non-payment of state and city taxes; a certificate of tax sale was issued by the Collector to the Mayor and City Council on November 5, 1941. On the 3rd day of December, 1942, the Mayor and City Council of Baltimore, as purchaser of the aforesaid properties, filed a bill of complaint in the Circuit Court for Baltimore City for the purpose of foreclosing all rights of redemption in and to the aforesaid properties of the appellants and of all persons having or claiming to have an interest therein, to which the complainants were duly subpoenaed.

Thereafter the appellants filed a bill of complaint in the Circuit Court of Baltimore City against the Mayor and City Council of Baltimore, a municipal corporation, in which the facts above stated were recited, claiming that Chapter 540 of the Acts of the General Assembly of Maryland, 1941, is unconstitutional and void in its entirety, because in violation of the Constitution of the United States and the State of Maryland. The prayers of the bill are:

(a) That said Act may be declared unconstitutional and void as an entirety.

(b) That its provisions referred to in the bill be declared to be unconstitutional and void.

(c) That the city be enjoined from maintaining and completing the aforesaid proceedings referred to in the bill.

(d) That the foreclosure proceedings referred to in the bill be declared invalid in so far as they relate to the property first described in said bill of complaint.

(e) For general relief.

To this bill a combined answer and demurrer was filed by the city.

The court decreed that the property secondly described in the bill, and particularly the prayer for an injunction, be dismissed; that as to the property firstly described, the city is enjoined and restrained from proceeding further with the case instituted against the complainants and the proceedings as to said property in said case "are hereby declared to be null and void." The lower court held the Act constitutional, but that the city did not comply with the Act in the proceeding dealing with the property first described in the appellants' bill of complaint. From this decree the appellants have appealed to this court and it presents the question of the propriety of the action of the court below in dismissing the appellants' bill in so far as it affected the property secondly described in the bill.

It is contended by appellants that the Act in question is unconstitutional, null and void, in that its provisions are in violation of due process of law, work inequality and impair the obligation of contracts.

The main point in the case is whether a proceeding initiated by a holder of a certificate of sale, authorized by the Act, is an action *in rem* or an action *in personam*. If it is an action *in personam* the parties to the proceedings would have to be personally summoned, but if it is an action *in rem*, the parties need not be summoned. In

determining this question the provision of the Act must be considered in the light of judicial determination in similar cases.

It is apparent from the terms of the Act that it is a proceeding to enforce payment of taxes due and in arrear on property by selling the property and applying so much of the proceeds as is necessary to pay all taxes and public dues and costs. It provides, among other things, notice to be given to the person appearing as owner on the tax records and warns him unless taxes due on the particular property are paid it will be sold by the Collector. If taxes are not paid after thirty days from the service of notice, as provided by the Act, the property is advertised and sold to the highest bidder, to whom the Collector gives a certificate of sale, which gives the holder a right any time after a year and a day, but within two years from the date of the sale of the property by the Collector, to institute a proceeding in an equity court in Baltimore City to foreclose the right of redemption of the owner of the property sold. In such a case the holder of a certificate of sale is plaintiff, the owner of the property whose interest can be ascertained from public records mentioned in the Act, any mortgagee of the property or his assignee of record as disclosed by the public records, the State of Maryland may be made parties defendant and it is "not necessary to name as defendant any other person having or claiming to have any right, title, interest, claim, lien or equity of redemption in and to the property sold by the Collector. Any or all such persons may be included as defendants by the designation "all persons having or claiming to have any interest in property * * *, (giving a description of the property in substantially the same form as the description which appears on the City Collector's tax roll)."

Provision is made for summoning parties interested within the State and for an order of publication against non-residents and all persons having or claiming to have

any interest in the property and the property is described in the publication as it appears on the tax records, and in cases where a survey is necessary the description by the surveyor is used to describe the property in the order of publication. This publication warns all parties interested to appear in court within a time limited and redeem the property and in the event no one appears the court passes a decree forever foreclosing the right of the owner to redeem the property. Thereafter, as directed by the decree of the court, the Collector gives the deed to the holder of the certificate of sale, but only after all taxes and public charges have been paid on the property to the date of the execution of the deed by the collector to the holder of the certificate of sale.

It will thus be seen that property against which taxes are due and in arrears is first sold by the Collector at public sale, to the highest bidder, and a certificate of sale given by the Collector to the person buying the property, and such holder, or his assignee, can proceed under the terms of the Act to institute a proceeding to foreclose the owner's right of redemption and for this purpose the courts of the city are given general equity jurisdiction, except as otherwise provided by the Act. Under this foreclosure proceeding the property is not again offered for sale to the highest bidder, but the court is given the power only in a proper case to foreclose the right of redemption and to decree that the Collector deed the property to the person or his assignee who bought the property at public sale from the Collector. It is contended that the machinery set up to foreclose the equity of redemption of a delinquent taxpayer in property sold is one in strict foreclosure and that, therefore, every person interested in the property is entitled to be named and brought in by personal process. This surely cannot be so, because in a case of strict foreclosure the property is sold to the highest bidder under a decree of court, the proceeds used to pay the mortgagee and

costs and the balance is paid to the mortgagor. *Mitsch v. Ownes,* 82 N. J. Eq. 404, 89 A. 292, page 293.

We cannot accept the contention of appellants that the Act in question should be viewed and restricted in the light of the law applicable to proceedings under strict foreclosure. As suggested by appellants' brief: "The Legislature may provide the most summary measures for the enforcement of the collection of taxes, even to the extent of selling property for non-payment thereof by giving notive only by publication and that such measures will not divest a citizen of his property without due process of law," and we think that the Legislature might adopt a part of the procedure in strict foreclosure in enforcing the collection of taxes, without rendering the proceeding itself one in strict foreclosure. In the instant case the subject is taxes due on certain property and the procedure to subject that property to payment of same. We think that that is the beginning and end of this case. It follows that no personal liability would attach to any defendant in this proceeding; that the decree entered in this case could not be a basis for an action in law or in equity against any of the defendants; no costs could be assessed against the defendants, as the taxes due and the accrued costs must be collected out of the proceeds of the property sold. It is hard, therefore, to conceive that this action is in strict foreclosure, and an action *in personam* against the parties defendants, and this contention cannot be accepted by this court. We regard this proceeding as one strictly against the property on which taxes are due and in arrear.

"Actions *in rem,* strictly considered, are proceedings against property alone treated as responsible for the claims asserted by the libelants or plaintiffs. The property itself is in such actions the defendant, and, except in cases arising during war for its hostile character, its forfeiture or sale is sought for the wrong, in the commission of which it has been the instrument, or for debts or obligations for which by operation of law it is

·liable. The court acquires jurisdiction over the property in such cases by its seizure, and of the subsequent proceedings by public citation to the world, of which the owner is at liberty to avail, himself by .appearing as a claimant in the case." *Freeman v. Alderson,* 119 U. S. page 185, 7 S. Ct. 165, 166.

In this case the effect of the notice given by the Collector was in effect a seizure of the property for the purpose of subjecting it to payment of taxes because of the wrong of the owner in withholding from the State taxes due thereon. And in the case cited, Mr. Justice Field held that there are certain actions which are *quasi in rem,* in a sense that there may be features which are *in rem* and others which are similar to an action *in personam.*

The case of *Leigh v. Green,* 193 U. S. 79, 24 S. Ct. 390, 392, 48 *L. Ed.* 623, is strikingly like the case at bar. The only material difference is that it provides where the owner of the land is unknown the action may be brought against the land itself. In the Act under review, where the present owner is unknown the notice is given to the last owner as appears on the tax record. It would certainly seem strange if property in Baltimore City, the owner of which is unknown, could not be proceeded against in order to collect taxes due thereon. Under Chapter 540, the owner last appearing on the tax books will be considered the owner, so that the difference in proceeding against property where the owner is unknown and proceeding against property assessed in the name of one who may not be its owner is at least hard to define. However this may be, as we have said, the proceeding instituted by the holder of the certificate of sale is one *in rem* and not *in personam.* The difference between the statute here under review and the statute reviewed in the case cited is indeed slight.

"That whenever, by the laws of a State, or by State authority, a tax assessment, servitude, or other burden is imposed upon property for the public use, whether it

be for the whole State or of some limited portion of the community; and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property, as is appropriate to the nature of the case,—the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." *Leigh v. Green, supra.*

"It is to be remembered that the primary object of the statute is to reach the land which has been assessed. Of such proceedings, it is said in *Cooley on Taxation,* 2d Ed., 527: 'Proceedings of this nature are not usually proceedings against parties; nor, in the case of lands or interests in lands belonging to persons unknown, can they be. They are proceedings which have regard to the land itself rather than to the owners of the land; and if the owners are named in the proceedings, and personal notice is provided for, it is rather from tenderness to their interests, and in order to make sure that the opportunity for a hearing shall not be lost to them, than from any necessity that the case shall assume that form'." *Leigh v. Green, supra.*

We therefore hold that the process against defendants in a suit brought by a holder of a certificate of sale as provided for in the Act in question does not violate due process of law.

It is contended that after the sale made by the Collector the delinquent owner of the property sold continues to be liable for taxes thereon until a deed is given for the same by the Collector under the decree of court, but the Act in terms provides that all taxes due and in arrear must be paid to the Collector at the time he executes the deed. Hence all liability of the delinquent owner for taxes due and in arrear on the property sold is extinguished.

It is argued that inasmuch as the Act presumes to be lawful all proceedings antedating the sale by the Collector, it is unconstitutional.

The proceeding to foreclose the right to redeem is brought in a court exercising general jurisdiction, except as otherwise provided. Defendants within the jurisdiction of the court are reached by subpoena; such as are without the State or persons who are interested in the property but unknown, are warned by publication which contains a description of the property involved, directing them to be in court on a certain day and redeem the property, seems to us to give full protection to people interested in the property. If they appear in response to this notice they can exercise fully their rights in a court of general jurisdiction and this provision of the Act gives full protection to all interested parties. After warning by such an order of publication it does not seem unreasonable that all proceedings antedating the sale by the Collector should be presumed to have been in accordance with the law.

After a decree foreclosing right to redeem, any one interested may attack the foreclosure proceeding on the ground of lack of jurisdiction or fraud. The Legislature cannot "make the tax deed conclusive evidence of the holder's title to the land, or of the jurisdictional facts which would make out title. But the Legislature might doubtless make the deed conclusive evidence of everything except the essentials." *Baumgardner v. Fowler,* 82 Md. 631, 34 A. 537, 538.

The Act in question does not make a tax deed conclusive evidence of jurisdictional facts, but by its very terms permits one interested to attack the decree of foreclosure on the ground of fraud or for want of jurisdiction.

Under the terms of the Act, one who has purchased a property at a tax sale held under the provision of the old law, may avail himself of the privilege afforded by Chapter 540 by instituting under its provision a proceeding to foreclose the delinquent taxpayer's right to

redeem the property. In such a case a purchaser at tax sale is not required to proceed under the provisions of Chapter 540, but he is at liberty to proceed either under the old law or under the provisions of Chapter 540. It is contended that the effect of this is to impair the obligation of a contract. Property sold at tax sale is sold by and on behalf of the State, city or county, to the highest bidder. That sale represents a contract between the State and the purchaser at tax sale. No property is ever sold for taxes with the assent of the owner. It is seized and sold by the State and we cannot see that such a sale represents a contract in which the owner is a party. The owner, it is true, can challenge the legality of the sale by the State, but when property has been sold in accordance with the law by the State at tax sale to the highest bidder, it can result in no contract in which the owner is interested. But even if this is not so, the breach of the obligation of the contract that is urged by the appellants is, that in tax sales made before the effective date of the Act under review, when the holder of the certificate of sale chooses to avail himself of the provisions of the new Act, results in giving the delinquent taxpayer more time within which to redeem his property. The same contention was made in the case of *Hickey v. Peck*, 180 Md. 289, 23 A. 2d 711, 715, and Judge Johnson, speaking for this court in that case, said: "The effect of this was to give the complainants more time to redeem their property and they are not in position to raise the objection."

We hold that Chapter 540 of the Acts of 1941 is constitutional in all of its provisions and the decree of the lower court will be affirmed.

*Decree affirmed, with costs.*